UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JASON MILLER | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 10-3298 |
| | * | |
| DIAMOND OFFSHORE MANAGEMENT CO. | * | |
| AND DIAMOND OFFSHORE SERVICES CO. | * | SECTION "B"(4) |

ORDER AND REASONS

Before the Court is Plaintiff's Motion for Partial Summary Judgment seeking summary judgment finding defendants liable and negligent per se, and prohibiting Defendants from introducing evidence regarding comparative fault. (Rec. Doc. No. 20). For the reasons articulated below,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. No. 20) be and is hereby **DENIED.**

I. *Cause of Action and Facts of Case*

This maritime personal injury case arises from injuries allegedly sustained by plaintiff to his shoulder and upper extremities in a fall on September 16, 2009 while employed by defendant aborad the Mobile Offshore Drilling Unit ("MODU") Ocean Confidence ("Ocean Confidence"). (Rec. Doc. Nos. 1, 6, 11, 12, 20-2 at 2). Parties agree that, at all pertinent times, Defendant owned the Ocean Confidence, a foreign flagged and registered vessel in navigation in the Gulf of Mexico off Louisiana's coastline. (Rec. Doc. Nos. 20-1 at 2; 30-3 at 1). On the day of

1

the accident, plaintiff was working as a roustabout aboard the Ocean Confidence which was working on the outer continental shelf. (Rec. Doc. Nos. 20-1 at 2; 30-3 at 2).  Plaintiff's fall and the alleged injuries thereby sustained occurred at approximately 5:45 a.m.  (Rec. Doc. Nos. 20-1 at 2; 30-3 at 3).  The specifics of Plaintiff's injury are disputed and further discussed below; however, both parties agree that Plaintiff fell into an "open area where the handrails had been temporarily removed" while walking along an area of the ship.  (Rec. Doc. Nos. 20-2 a 1-2; 30 at 2-3).  Both parties acknowledge that one of Plaintiff's co-workers, Richard Mullins, had fallen into the same hole three hours prior to Plaintiff's fall.  (Rec. Doc. No. 20-2 at 1-2; 30 at 3).

Movant contends that he fell into the "hole due to . . . slippery mud on the deck, inadequate lighting during his night shift, and the absence of guardrails that had been removed from the area" around the opening.  (Rec. Doc. No. 20-2 at 1).  Movant primarily contends that Defendants' alleged violation of U.S. Coast Guard regulations intended to protect Movant, without a valid excuse, caused Movant the instant injuries and that, as such, there exist no issues of material fact that would preclude summary judgment.  *Id*. at 2.  Because Respondents are negligent *per se*, Movant argues, they are precluded from raising any defense of comparative fault.  *Id*. at 2-5.  Regarding causation, Movant contends that jurisprudence shifts the burden of proof of

causation to Respondents to show that their alleged statutory or regulatory violation could not have been the cause of the accident. (Rec. Doc. No. 20-2 at 5).

Respondents primarily contend that a finding of negligence *per se* would be unsupported by the facts and thus, the issue of whether Respondents may raise the defense of comparative fault should not at this stage be reached as summary judgment is precluded. (Rec. Doc. No. 30 at 2). Respondents highlight Movant's knowledge of the "open area where the handrails had been temporarily removed [as] . . . . his supervisor, Richard Mullins, had actually fallen into the bay area three hours prior."[1] (Rec. Doc. No. 30 at 3).

## II. *Law and Analysis*

### A.   <u>Summary Judgment Standard</u>

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the

---

[1] Respondents reiterate this assertion on the same page, stating that Movant's "foot slipped into the very same hole from which he had three hours earlier excavated his supervisor." (Rec. Doc. No. 30 at 3). Respondents cite Plaintiff's deposition testimony in which Plaintiff sated that it "slipped his mind" that the "hole was there." (Rec. Doc. No. 30-1 at 12).

nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.   Negligence *Per Se* Under the Jones Act

The five elements of a claim of Jones Act negligence *per se*, pursuant to the jurisprudence of the Fifth Circuit are:

(1) a violation of [a statute or] Coast Guard regulations,

(2) the plaintiff's membership in the class of intended beneficiaries of the regulations,

(3) an injury of a type against which the regulations are designed to protect,

(4) the unexcused nature of the regulatory violation, and

4

(5) causation.[2]

There exists in the instant case a genuine issue of fact as to the applicability of the Coast Guard regulation cited by Plaintiff, 46 CFR § 108.217; specifically, whether the hole into which Plaintiff's supervisor and later Plaintiff fell constitutes a "deck opening" within the purview of the regulation.[3] Because this finding precludes summary judgment, the Court need not address whether the remaining factors are met.[4]

    1. <u>Violation of Statute or Coast Guard Regulation</u>

Movant cites two sections from the Code of Federal Regulations as those regulations which Defendant allegedly violated, 33 C.F.R. § 143.207 and 46 C.F.R. § 108.217. (Rec. Doc. No. 20-2 at 4). 33 C.F.R. § 143.207, entitled "Requirements for Foreign MODUs" states:

> Each mobile offshore drilling unit that is documented under the laws of a foreign nation must, when engaged in OCS activities, comply with one of the following:
>
> (a) The design and equipment standards of 46 CFR Part 108.
>
> (b) The design and equipment standards of the documenting nation if the standards provide a level of

---

[2]*Stiard v. U.S.*, No. 05-CV-1926-K, 2008 WL 927948 at *7 (E.D. La. 2008) *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 160 (5th Cir.1985) (quoting *Reyes v. Vantage S.S. Co., Inc.*, 558 F.2d 238, 242-44 (5th Cir.1977)(*Reyes* I).

[3]There exist no issues of fact regarding the cited regulations' applicability to Mobile Offshore Drilling Units.

[4]It should be noted that, as Respondents "concede[] that plaintiff qualified as a mariner and that the Coast Guard Regulations, in general, promote the welfare and safety of mariners at sea", it appears the second factor would easily be satisfied, had the Court occasion to reach it.

safety generally equivalent to or greater than that
provided under 46 CFR Part 108.

(c) The design and equipment standards for mobile
offshore drilling units contained in the International
Maritime Organization (IMO, formerly Inter-Governmental
Maritime Consultative Organization or IMCO) (IMO) Code
for Construction and Equipment of Mobile Offshore
Drilling Units (IMO Assembly Resolution A.414(XI)) which
has been incorporated by reference.

Movant next quotes 46 CFR § 108.217, a Coast Guard regulation

addressing the construction and arrangement of design and

equipment in relation to mobile offshore drilling units entitled

"Guardrails and bulwarks" which states:

(a) Each unit must have guardrails or bulwarks along the
edge of the bridge, of each deck, and of each deck
opening.

(b) Each guardrail and bulwark must extend at least one
meter (39.37 inches) above the deck except where this
height may interfere with the normal operation of the
unit, a lesser height may be approved.

(c) Removable guardrails may be installed where
operating conditions warrant their use.[5]

Movant contends that, as Respondents had no guardrail in place

when Plaintiff fell, in violation of the quoted regulations

Respondents are negligent *per se*.  (Rec. Doc. No. 20-2 at 5).

Respondents argue that the opening at issue may not fall within

the purview of § 108.217(a) as the opening was located in an "area

---

[5]Respondents point to this subsection in support of their contention
that there exists an issue of fact regarding applicability of the regulation
because a section of handrail had been removed or "cut out" by welders from
its original location at the side of the "hole". (Rec. Doc. No. 30 at 6)
(citing Rec. Doc. No. 30-1 at 6-7).  However, 108.217(c) does not here appear
applicable, as that section addresses "removable guardrails" and the guardrail
at issue here was "cut out."  *Id.*

6

[] more technically known as the riser bay." (Rec. Doc. No. 30 at 6).   Respondents point to Plaintiff's deposition testimony in which Plaintiff used the term "riser bay" rather than "deck" to describe the location of what Plaintiff also called a "hole".  *Id*. (citing Rec. Doc. No. 30-1 at 5) (*see also* Rec. Doc. No. 20-4 at 50-55).

In *Jackson v. Noble Drilling*, No. 95-CV-1520, 96 WL 291740, (E.D. La., 1996), Plaintiff, a roustabout aboard employer's "jackup rig" (another term for a MODU), sued employer for damages resulting from injuries allegedly incurred upon falling through an "opening in the deck . . . created by the removal of the deck grating that normally covered the opening."   In an unpublished opinion denying Plaintiff's summary judgment motion and granting Defendant's, the District Court initially found § 53 of the Federal Employees Liability Act ("FELA") applicable because "Plaintiff's cause of action [was] asserted under the Jones Act".[6] *Id*. at *1.

The district court then turned to the applicability of § 108.217 and another, more specific statute not at issue in the

---

[6]Section 53 of FELA states, in pertinent part "no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."  46 U.S.C. § 53 (cited in *Jackson*, 96 WL 291740 at *1) (citing *Roy Crook & Sons v. Allen*, 778 F.2d 1037, 1038 (5th Cir.1985).  *See also Kernan v. American Dredging Co.*, 355 U.S. 426 (1958).

case *sub judice*.[7]   *Id*. at. *2.   Comparing 108.217 to the other regulation, the court stated "[s]ection 108.217, a rather general provision that requires guardrails around 'each deck opening', is somewhat ambiguous regarding the scope of its application . . . . [it] requires, without equivocation, guardrails around each deck opening . . . ." *Jackson*, 96 WL 291740 at *2.   As the other regulation was more specific, the court cited the "commonplace statutory construction that the specific governs the general" and that, as § 108.217 was more general, it was "trumped by . . . the more specific provision".  *Id*.

Thus, Respondents' statement that § 108.217 "has been determined to be ambiguous and inapplicable to a [MODU] (similar to the drilling rig at issue here) . . . ." is made without great regard to the context of the cited authority.  (Rec. Doc. No. 30 at 5) (citing *Jackson v. Noble Drilling*, No. 95-CV-1520, 96 WL 291740 (E.D. La. 1996).

Nevertheless, there exists a genuine issue of fact regarding whether the hole into which Plaintiff fell constituted a "deck opening" within the purview of 46 C.F.R. § 108.217.

New Orleans, Louisiana, this 24TH day of June, 2011.

---

[7]The other regulation involved in *Jackson*, 33 C.F.R. § 142.87, entitled "Guarding of deck openings" states "Openings in decks accessible to personnel must be covered, guarded, or otherwise made inaccessible when not in use. The manner of blockage shall prevent a person's foot or body from inadvertently passing through the opening."

UNITED STATES DISTRICT JUDGE